*1116 TEXTO COMPLETO DE LA SENTENCIA
En la causa de epígrafe, el recurrente, Servidores Públicos Unidos de Puerto Rico (SPU o apelante), solicita que revisemos y revoquemos la Sentencia que emitiera el 2 de noviembre de 2009 el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). De tal forma se desestimó la demanda incoada por SPU y el TPI determinó que la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH) y la Comisión de Relaciones del Trabajo del Servicio Público (CRTSP) tienen jurisdicción exclusiva para atender los reclamos de los SPU, acorde con el Capítulo III de la Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, Ley Núm. 7 de 9 de marzo de 2009, según enmendada (Ley 7).
Trasciende de autos que entre septiembre y octubre de 2009, los 19 empleados representados por SPU en la causa de epígrafe fueron notificados mediante cartas firmadas por la Presidenta de la Junta de Libertad Bajo Palabra (JLBP), de la intención de cesantía efectiva el 6 de noviembre de 2009. (Ap., págs. 1, 31-49.)
El 28 de octubre de 2009, SPU presentó solicitud de sentencia declaratoria e injunction en contra del Estado Libre Asociado de Puerto Rico (ELA), el Departamento de Corrección, la JLBP y la Junta de Reestructuración y Estabilización Fiscal (JREF) [1] (apelados). Expusieron que uno de los mecanismos que permitía la Ley 7, supra, para eliminar puestos de empleo en las agencias era el de las cesantías involuntarias mediante decreto.
Ambas partes explicaron que la Ley 7, supra, sufrió enmienda mediante la Ley Núm. 37 de 10 de junio de 2009 y, entre otras cosas, ello tuvo el efecto de excluir varias agencias y clasificaciones de empleos del plan de cesantías. Para SPU, la JLBP y todos sus empleados se encuentran excluidos del plan de cesantías. Argüyeron que la notificación de la intención de cesantía violaba los preceptos establecidos en el Art. 37.02 de la Ley 7, supra, ya que de acuerdo a tal disposición los empleados de la JLBP están exentos de despido en la Fase II de cesantías. También alegan que el Art. 37.04 no ofrece un debido proceso de ley para que los empleados cesanteados impugnen las decisiones administrativas ante la CASARH o la CRTSP, pues, según su interpretación, dicho artículo solamente les concede derecho a impugnar los años de servicio por antigüedad, pero no la determinación de cesantía. (Escrito de Apelación, pág. 12.)
Amparándose en tales argumentos, SPU expone que intentar agotar los remedios administrativos sería “un ejercicio fútil y pasaría el tiempo sin que se íes concediera un remedio real y adecuado en comparación al daño que se le estaría causando.” (Ap., pág. 10.) La parte apelante solicitó que el TPI ordenase a los apelados a “cumplir fiel y estrictamente con lo dispuesto en el Art. 37.02 de la Ley Núm. 7 de 9 de marzo de 2009, según enmendada, excluyendo de las cesantías a los empleados demandantes de la JLBP, dejando sin efecto la comunicación objeto de esta demanda.” Id.
*1117 El 26 de octubre de 2009, el TPI emitió orden señalando vista para el 28 de octubre de 2009, a los únicos efectos de dilucidar la procedencia del injunction. Por su parte, los apelados presentaron ante el TPI una “Moción Urgente Solicitando Desestimación y/o Sentencia Sumaria” el 28 de octubre de 2009. En síntesis, formularon cinco argumentos desestimatorios:
“(1) Que el Art. 34 de la Ley 7, supra, revelaba que el presupuesto de la agencia se sufragaba con cargo al Fondo General del Gobierno, por lo que la agencia concernida no estaba exenta de la aplicación de las disposiciones del Capítulo III relacionado con las medidas de reducción de gastos, Id., pág. 51;
(2) Que el TPI no poseía jurisdicción sobre el caso porque los apelantes cuestionaban una actuación de la JREF al amparo del Capítulo III de la Ley 7, supra, Id., pág. 60;
(3) Que los apelantes habían radicado ante la CRTSP peticiones de arbitraje para la revisión de la cesantía notificada por la JLBP, Id:,
(4) Que la SPU no cumplió con los requisitos para la expedición del injunction, toda vez que éstos no demostraron que tenían probabilidades de prevalecer en el pleito y que surgiera un riesgo de sufrir daños irreparables, Id., págs. 65-66;
(5) Que lo que el Art. 37.02 disponía era que los empleados de la JLBP que serían excluidos de las cesantías eran solamente aquellos que llevaban a cabo funciones esenciales en pos de la protección de la seguridad, enseñanza, salud y bienestar, por lo que este artículo no excluía a la JLBP de las cesantías de la Fase II.” Id., págs. 76-77.
El 2 de noviembre de 2009, luego del TPI celebrar vista para recibir las posturas de las partes, emitió la Sentencia de la cual se recurre, determinando que la CASARH y la CRTSP son los foros con jurisdicción exclusiva para atender las apelaciones y decisiones tomadas al amparo del Capítulo III de la Ley 7, supra. Ante ello, desestimó el injunction y sentencia declaratoria instada por SPU, por falta de jurisdicción para entender en los méritos del asunto.
Inconforme, el 12 de enero de 2009, los apelantes acudieron ante nos imputándole al foro de instancia haber incidido de la siguiente forma:

“A. El Tribunal de Primera Instancia erró al declararse sin jurisdicción para atender la demanda de los demandantes-apelantes.

B. El Tribunal de Primera Instancia erró al no interpretar que el Artículo 37.02 de la Ley Núm. 7 de 9 de marzo de 2009, según enmendada, dispone que están exentos los empleados de la Junta de Libertad Bajo Palabra de las cesantías resultando en el despido de estos empleados. ”

Con el beneficio de la comparecencia de ambas partes, la causa está sometida y debemos disponer.
Exposición y Análisis
I
La Ley Especial Declarando Estado de Emergencia Fiscal y Estableciendo Plan Integral de Estabilización Fiscal para Salvar el Crédito de Puerto Rico, supra, estableció desde el 9 de marzo de 2009 un plan de emergencia para corregir el déficit presupuestario gubernamental de Puerto Rico. Esta ley instituyó un plan de tres fases para la reducción de la nómina pública. La implantación de este plan quedó en manos de la JREF y tendría efecto sobre “...todas las dependencias de la Rama Ejecutiva cuyo presupuesto se sufraga, en todo o en *1118 parte, con cargo al Fondo General; tales como agencias, departamentos, juntas, comisiones, administraciones, oficinas y subdivisiones.” Ley 7, supra, pág. 18.
En cuanto a los empleados que no se acogieren al plan de reducción de jomada y renuncias incentivadas y que no fueran empleados de nombramiento transitorio o irregular, el Art. 37 de la referida ley estableció una Fase II para continuar la instauración del recorte de gastos. Esta segunda fase del plan consistió en que las agencias podrían cesantear involuntariamente a empleados públicos adscritos a los puestos aplicables, en todas las agencias de la Rama Ejecutiva del Gobierno de Puerto Rico.
Con el propósito de establecer un foro para dirimir las controversias que surjan a partir de lo dispuesto en el Capítulo III de la Ley 7, supra, y “lograr una solución rápida y justa de sus acciones”, el Art. 46 de la referida ley dispuso lo siguiente:

“Artículo 46.-Interés público y foro para dirimir controversias. Si bien los asuntos aquí contenidos están revestidos de gran interés público, es importante además velar por los derechos de los empleados afectados en cuanto a las acciones a tomarse conforme a lo dispuesto en este Capítulo III, y así brindarles la oportunidad de lograr una solución rápida y justa de sus reclamaciones.

(a) La CASARH tendrá jurisdicción para atender apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este Capítulo III, en todo aquello que no conflija con éste, de aquellos empleados no cubiertos por las disposiciones de la Ley de Relaciones del Trabajo para el Servicio Público, Ley Núm. 45 del 25 de febrero de 1998, según enmendada. Tendrá asimismo, jurisdicción apelativa voluntaria sobre los empleados no organizados sindicalmente de aquellas agencias excluidas de la aplicación de las disposiciones de la -Ley para la Administración de los Recursos Humanos en el Servicio Público del Estado Libre Asociado de Puerto Rico de 2004, en cuanto a apelaciones surgidas como consecuencia de acciones o decisiones tomadas conforme a este Capítulo III, en todo aquello que no conflija con este último. Los procedimientos ante la CASARH se regirán por lo dispuesto en la Ley Núm. 184 del 3 de agosto de 2004, según enmendada, y su reglamento.

(b) La Comisión [de Relaciones del Trabajo del Servicio Público] creada al amparo de Artículo 11 de la Ley de Relaciones del Trabajo para el Servicio Público, Ley Núm. 45 de 25 de febrero de 1998, según enmendada, mantendrá jurisdicción para ventilar cargos de práctica ilícita y prestar servicios de arbitraje, en cuanto a acciones o decisiones cubiertas por la Ley Núm. 45 del 25 de febrero de 1998, según enmendada, en armonía con las disposiciones de esta Ley. Los procedimientos ante dicha Comisión se regirán por lo dispuesto en la Ley Núm. 45 del 25 de febrero de 1998, según enmendada, y su reglamento. Disponiéndose, que conforme a lo indicado en esta Ley, ninguna actuación llevada conforme a sus disposiciones constituirá una violación a los convenios colectivos existentes, o una negativa a negociar de buena fe o una práctica ilícita.

(c) Ante la posibilidad de un aumento en la cantidad de reclamaciones ante la Comisión, y para asegurar un debido proceso de ley y una solución justa y rápida en los procedimientos ante dichos organismos, se aumenta la composición de la Comisión aun (1) Presidente y cinco (5) miembros asociados. El nombramiento, destitución, sueldo, funciones y otras condiciones de nombramiento de los miembros asociados adicionales estarán regidos por lo dispuesto en la Ley de Relaciones del Trabajo para el Servicio Público, según enmendada. El nombramiento de los nuevos miembros asociados será por. un término de seis (6) años.

Asimismo, se autoriza al Presidente de la Comisión nombrar a los árbitros que sean necesarios para que realicen las labores encomendadas por este Capítulo III.

(d) Se autoriza al Presidente de la CASARH a nombrar y designar a los Oficiales Examinadores que sean necesarios para que realicen las labores que la Ley para la Administración de los Recursos Humanos en el 
*1119
Servicio Público del Estado Libre Asociado de Puerto Rico de 2004 y su reglamento les faculta. Se autoriza al Presidente y los Comisionados de CASARH a celebrar vistas y llevar a cabo procedimientos adjudicativos compatibles a los de un Oficial Examinador, según lo define el Reglamento Procesal de la CASARH. El Presidente podrá delegar en los Comisionados funciones compatibles a las de un Oficial Examinador. ”

El Art. 14 del Código Civil, 31 LPRA § 14, dispone que “cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir su espíritu”. En virtud de dicho mandato, estamos obligados a remitirnos al texto de la ley cuando interpretamos un estatuto. La manifestación clara del legislador es la expresión por excelencia de toda intención legislativa. Ortiz López v. Mun. de San Juan, 167 DPR 609 (2006); Departamento de Hacienda v. Telefónica, 164 DPR 195 (2005); Irizarry v. Johnson & Johnson, 150 DPR 155 (2000); Rodríguez Rosa v. Méndez & Co., Inc., 144 DPR 734 (1999).
En el cumplimiento de esta función, “resulta necesario que en la interpretación se armonicen, hasta donde sea posible, todas las disposiciones de la ley con el propósito de lograr una interpretación integrada, lógica y razonable de la intención legislativa”. Matos v. Junta Examinadora, 165 DPR 741, 749 (2005). Las disposiciones de una ley no deben ser interpretadas de manera aislada, sino en conjunto y tomando en consideración integralmente todo su contexto. Departamento de Hacienda v. Telefónica, 164 DPR 195 (2005); Municipio de San Juan v. B.G.F., 140 DPR 873 (1996).
Adicionalmente, para interpretar la ley es imperativo atender la voluntad del legislador vis-a-vis su propósito. Para ello debemos presumir la sensatez y razonabilidad de dichos actos legislativos. M & R Developers S.E. v. B.G.F., 153 DPR 596 (2001). Por lo tanto, una interpretación de ley que nos conduzca a una conclusión absurda, debe ser rechazada. R. E. Bemier y J. A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed., San Juan, Publicaciones JTS, 1987, pág. 242. Por ello, al ejercer nuestra función de interpretar las leyes “tenemos la obligación de armonizar hasta donde sea posible todas las disposiciones de ley envueltas para lograr el resultado más sensato, lógico y razonable”. Andino v. Fajardo Sugar Co., 82 DPR 85, 94 (1961). Es norma reiterada que “al interpretar la ley hay que leerla y considerarla en su totalidad, no fraccionalmente y para encontrarle su significado, el tribunal tiene que tener en cuenta el propósito de la misma”. Delgado v. D.S.C.A., 114 DPR 177, 182 (1983); Cirino v. Fuentes Fluviales, 91 DPR 608, 616 (1964).
Dos son los principios que gobiernan el momento en que está disponible para una parte un remedio judicial, cuando también está a su alcance el cauce administrativo. Se trata de la doctrina sobre jurisdicción primaria y la de agotamiento de remedios administrativos.
La doctrina de jurisdicción primaria se desdobla en dos vertientes, a saber, la jurisdicción primaria exclusiva y la jurisdicción primaria concurrente. En la primera, la ley dispone que el organismo administrativo será el único con jurisdicción inicial para examinar la reclamación. Colón Ventura v. Méndez, 131 DPR (1992); Aguilú v. Puerto Rico Parking System, 122 DPR 261 (1988). En la segunda, es decir, en la concurrente, la ley permite que la reclamación se inicie bien en el foro administrativo o en el judicial. First Fed. Savs. v. Asoc. de Condómines, 114 DPR 426 (1983); Ferrer Rodríguez v. Figueroa, 109 DPR 398 (1980); Ferretería Matos, Inc. v. P.R. Tel. Co., 110 DPR 153 (1980).
En Ferrer Rodríguez v. Figueroa,. 109 DPR 398, 402 (1980), el Tribunal Supremo aclaró que la doctrina de jurisdicción primaria cobra vigencia cuando existe jurisdicción concurrente entre el foro administrativo y el judicial. Rivera Ortiz v. Mun. de Guaynabo, 141 DPR 257, 267 (1996); Aguilú v. P.R. Parking, 122 DPR 261, 266 (1988).
Cuando una agencia y los tribunales cuentan con jurisdicción concurrente surge la necesidad de armonizar las funciones adjudicativas. Así, la doctrina asiste a los tribunales para determinar cuál de las vías, la *1120 administrativa o la judicial, es la que en tales situaciones debe atender el asunto. Semidey Ortiz v. ASIFAL, 111 DPR_(2009), 2010 JTS 3; Rivera Ortiz v. Mun. de Guaynabo, supra.
Ahora bien, cuando la ley habilitadora sólo confiere la jurisdicción al organismo administrativo, se trata de una jurisdicción estatutaria exclusiva que limita la intervención del foro judicial a etapas revisoras. Semidey Ortiz v. ASIFAL, supra. Aunque el concepto guarda semejanza con la jurisdicción primaria concurrente, es distinto en cuanto a su alcance y naturaleza. La jurisdicción exclusiva no da espacio al foro judicial de primera instancia, salvo en circunstancias muy especiales que no vienen al caso presente. Colón v. Méndez, Dept, de Recursos Naturales, 130 DPR 433, 442-444 (1992). De existir tal mandato legislativo, de ordinario, los tribunales de primera instancia no tendrán autoridad para dilucidar en primera instancia las controversias que se les presenten. Rivera Ortiz v. Mun. de Guaynabo, supra, pág. 268. Por tanto, la jurisdicción primaria exclusiva no soslaya la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo. Id:, Junta de Directores v. Fernández, 136 DPR 223 (1994).
Cónsono a ello, la sección 4.3 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA see. 2173, dispone que el tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos, cuando el remedio solicitado ante la agencia es inadecuado; cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios; cuando se viola sustancialmente los derechos constitucionales; cuando sea inútil agotar remedios administrativos por la dilación excesiva en los procedimientos; cuando el caso es de clara falta de jurisdicción y el asunto es estrictamente de derecho y es innecesaria la pericia administrativa. Delgado Rodríguez v. Nazario de Ferrer, 121 DPR 347 (1988).
Para atender el primer señalamiento de error, tenemos primero que determinar si la doctrina de jurisdicción primaria exclusiva o la concurrente es la controlante. SPU aduce que la Ley 7, supra, no otorga jurisdicción a la CRTSP para dirimir respecto a la actuación administrativa encaminada a hacer valer la carta de intención de cesantía a los empleados, ya que “en el caso de autos no es necesaria la pericia administrativa de la CASARH ni de la CRTSP, ya que el asunto es uno estrictamente de derecho; y requerir su agotamiento resultaría en “daño extraordinario e irreparable”. (Ap., págs. 19-20.) De este modo, SPU apoyó su argumentación en una de las excepciones de la sección 4.3 de la LPAU, supra.
No podemos concurrir. El Art. 46 de la Ley 7, supra, fue concebido con el propósito de mantener vigente el cauce administrativo para la solución de las controversias que surjan a partir de lo dispuesto en el Capítulo III de dicho estatuto para “lograr una solución rápida y justa de sus reclamaciones.” El inciso (b) de dicho artículo específicamente consigna que la CRTSP “mantendrá jurisdicción para ventilar cargos de práctica ilícita y prestar servicios de arbitraje en cuanto acciones o decisiones cubiertas por la Ley Núm. 45 del 25 de febrero de 1998, según enmendada, [3 LPRA see. 1451 et seq.\ en armonía con las disposiciones de esta Ley.” También, este inciso especifica que “[l]os procedimientos ante dicha Comisión se regirán por lo dispuesto en la Ley Núm. 45”, Id. De ello se deduce la voluntad del legislador en mantener, con la Ley 7, supra, el arbitraje ante la CRTSP en cuanto a acciones o decisiones relacionadas con la Ley Núm. 45, supra, cuando éstas afecten a empleados cubiertos por dicha ley, como lo son los apelantes.
El 25 de febrero de 1998, la Asamblea Legislativa de Puerto Rico aprobó la Ley de Relaciones del Trabajo (Ley 45), con el propósito de conferir a los empleados públicos que no estén cubiertos por la Ley Núm. 130 de 8 de mayo de 1945, 29 LPRA see. 62, el derecho a organizarse para negociar sus condiciones de trabajo según los parámetros establecidos por la propia Ley 45, supra.
A fin de hacer cumplir las disposiciones de la Ley 45, supra, el legislador dispuso para la creación de un organismo administrativo denominado “Comisión de Relaciones del Trabajo del Servicio Público”, a quien confirió poderes y facultades cuasi legislativas y cuasi judiciales. 3 LPRA § 1452(t).
*1121 Mediante la aprobación de esta pieza legislativa se creó la CRTSP, entidad encargada de interpretar, aplicar y hacer cumplir las disposiciones de la Ley en todo lo relativo a procesos de organización, certificación, decertificación de organizaciones sindicales, procedimientos relacionados con la conciliación y arbitraje de negociaciones de convenios colectivos, procedimientos relacionados con prácticas ilícitas y en todos aquellos aspectos que la Ley le haya delegado alguna actuación en particular. Entre sus muchas facultades, la CRTSP cuenta con autoridad en ley para resolver controversias relativas a la aplicación de su propio estatuto. Art. 8, 3 LPRA see. 1452. A este efecto, la CRTSP está facultada para revisar:

“(a) [TJoda controversia surgida al amparo de un convenio colectivo negociado entre las partes, será dirimida a través de los mecanismos pactados en el convenio colectivo para el ajuste de quejas y agravios.

(b) Todo convenio entre el representante exclusivo y la agencia deberá incluir procedimientos para resoluciones de quejas y agravios, incluyendo el arbitraje, que pueda surgir durante la vigencia de un convenio, incluyendo controversias sobre la aplicación e interpretación de sus cláusulas.

(c) Las partes vendrán obligadas a acogerse al servicio de arbitraje provisto por la Comisión de Relaciones del Trabajo en el sector público. ”

La Ley Núm. 45, supra, consigna in fine el mandato de que la separación se hará, “según se establezca mediante reglamento al respecto en el que se tome en consideración entre otros factores el status de los empleados y su antigüedad y el tiempo en servicio”. 3 LPRA see. 1336.
Conforme el derecho anteriormente esbozado, cuando existe un estatuto que expresamente confiere la jurisdicción en primera instancia a un organismo administrativo sobre determinado tipo de asunto, los tribunales quedan privados de toda autoridad para dilucidar el caso en primera instancia. Rivera Ortiz v. Mun. de Guaynabo, supra. El hecho de que la ley haya concedido jurisdicción exclusiva al foro administrativo, es totalmente cónsono con que la posterior revisión es de carácter judicial. Id. Ciertamente, el precepto contenido en el Ar. 46 de la Ley 7, supra, establece, entre otras, la facultad que tiene la CRTSP para servir de árbitro para ventilar cargos de práctica ilícita “en cuanto a acciones o decisiones cubiertas por la Ley Núm. 45”; lo que nos obliga a interpretar el significado, alcance y naturaleza de esta disposición con el propósito intrínseco de la Ley Núm. 45, supra, sin que implique incidir en las disposiciones de la Ley 7, supra.
Al momento de concretarse la controversia de autos, SPU disponía de un trámite adecuado en ley para ventilar la disconformidad de los empleados a las cartas de intención de cesantías. De autos surge que la apelante radicó ante la CRTSP -en representación de todos los .empleados de la JLBP y la Organización de Servidores Públicos Unidos de Puerto Rico agrupados bajo ésta-, “Petición de Arbitraje” al amparo de la Ley Núm. 7, supra. Ap., Exhibit I, págs. 84-103. Además, surge que el derecho de revisión de los empleados afectados para recurrir de la determinación de cesantías fue efectivamente notificado por la JLBP. Por su pertinencia, procedemos a citar lo que al pie de dicha carta consta:
“De usted estar en desacuerdo con esta determinación tendrá derecho a solicitar de la misma ante la Comisión Apelativa del Sistema de Administración de Recursos Humanos (CASARH), dentro del término de treinta (30) días a partir del recibo de esta notificación. Si usted es un empleado unionado, tendrá derecho a solicitar revisión dentro del mismo término de treinta (30) días, ante la Comisión de Relaciones del Trabajo del Servicio Público, según dispuesto en el Convenio Colectivo. ” (Ap., págs. 31-49.)
La apelante, luego de iniciar en tiempo hábil su petición de arbitraje ante la CRTSP al amparo de la Ley 7, supra, (Ap., págs. 84-102), no podía también recurrir directamente ante el TPI, para revisar la actuación de la agencia administrativa.
*1122 Temas de política pública de carácter jurisdiccional que puede incidir con asuntos laborales cobijados en un convenio colectivo, es de jurisdicción original exclusiva de la CRTSP. Por lo tanto, la misma norma acoge la situación obrero-patronal de autos. No podemos interpretar, como sugiere el apelante, que cuando el Art. 46, supra, dispone que “...ninguna actuación llevada conforme a sus disposiciones [Ley Núm. 45] constituirá una violación a los convenios colectivos existentes”, ello es equivalente a que la jurisdicción de la CRTSP en materia de arbitraje haya quedado “temporeramente suspendid[a]”. (Escrito del apelante, pág. 12.) La jurisdicción original de la CRTSP sobre este asunto no le ha sido retirada por la Ley 7, supra. Domínguez Castro et. al. v. E.L.A., res. el 2 de febrero de 2010, págs. 26-27, 177 DPR_(2010), 2010 JTS 20.
Es de recordar que el convenio colectivo es instrumento de gran importancia en el campo laboral. U.I.L. de Ponce v. Dest. Serrallés, Inc., 116 DPR 348 (1985), y representa el medio a través del cual se construyen las relaciones obrero-patronales, mediante un contrato que posee fuerza de ley entre las partes que lo suscriben. J.R.T. v. Junta Adm. Muelle Mun. de Ponce, 122 DPR 318 (1988).
De modo que si bien el convenio colectivo constituye un asunto de derecho entre patrono y empleado, en tanto y en cuanto la controversia ante nos requiere de la interpretación e implementación de posterior legislación que pueda afectar estas relaciones obrero-patronales a la luz de los convenios existentes entre las partes de epígrafe, la utilización de la pericia administrativa de la CRTSP es necesaria para arribar a una correcta y rápida solución de la controversia de derecho planteada. Así lo dispuso el Legislador en la ley especial. Ante ello, no se justifica preterir el trámite administrativo de la ley general, alegando una de las excepciones que ofrece la sección 4.3 de la LPAU, supra. Por el contrario, la situación que obliga a implementar las disposiciones de la Ley 7, supra, dentro de un taller de trabajo controlado por un convenio colectivo, es precisamente la que requiere el peritaje uniforme y metodología de la CRTSP, y por ello así lo dispuso el legislador en forma específica, como jurisdicción primaria exclusiva.
En resumen, las razones ofrecidas por los apelantes para justificar la excepción a la doctrina de abstención de revisión administrativa, no justifican preterir en este caso el foro de la CRTSP. Resolvemos que la CRTSP tiene jurisdicción primaria exclusiva para atender asuntos como los del caso sub judice.
Estamos pues ante una situación que no nos ofrece justificación en el expediente para marginar el trámite administrativo de la CRTSP por las alegadas violaciones a derechos constitucionales. El injunction solicitado, como recurso legal extraordinario, no está aquí disponible, pues sólo podría “utilizarse cuando el procedimiento, ordinario no provea un remedio rápido, adecuado, y eficaz, para la corrección de un agravio de patente intensidad al derecho del individuo que reclame urgente reparación.” Otero Martínez v. Gobernador, 106 DPR 552 (1977).
En el segundo señalamiento, la parte apelante imputa error al TPI al no haber interpretado que el Art. 37.02 de la Ley 7, supra, exime de las cesantías a todos los empleados de la JLBP.
Con el propósito de que las cesantías no tengan un impacto negativo en los servicios del Gobierno a la comunidad, la Ley 7, supra, estableció clasificaciones a diferentes “empleados” que por sus “funciones esenciales en la protección de la seguridad, enseñanza, salud y bienestar” están exentos de las cesantías expuestas en el Art. 37 de la Ley 7, supra. A modo de excepción, dicho Art. 37.02 establece una lista de puestos exentos de cesantías involuntarias. Ello, a “fin de evitar un impacto negativo en los servicios brindados por el Gobierno”. Id.
En la promulgación original de la Ley 7, el 19 de junio de 2009, el Art. 37.02, supra, enumeraba ocho profesiones o empleos exentos de las disposiciones del Artículo 37, supra. Para entonces, los empleados de la JLBP no estaban comprendidos en esa lista. Posteriormente, la sec. 40 de la Ley 37 de 10 de julio de 2009 enmendó el Art. 37.02 de la Ley 7, supra, a los fines de ampliar la lista de clasificaciones de empleos exentos *1123 de ser cesanteados involuntariamente. En ésta figuró el “Personal de la Junta de Libertad Bajo Palabra”. Id., Art. 37.02.
Procedemos a citar el referido Art. 37.02, según enmendado:

“Artículo 37.02.-Exclusión de la aplicación de la Fase II

A fin de evitar un impacto negativo en los servicios brindados por el Gobierno, y en cumplimiento con lo dispuesto en el Artículo 2 de esta Ley, estarán exentos de las cesantías de la presente ley los empleados de las Agencias que según sus clasificaciones llevan a cabo funciones esenciales en protección de la seguridad, enseñanza, salud y bienestar según serán definidos por la JREF, tales como:

(a) policías y bomberos, agentes del Cuerpo de Vigilantes, agentes del Negociado de Investigaciones Especiales y la Oficina del Fiscal Especial Independiente;

(b) oficiales de corrección y oficiales juveniles;

(c) maestros asignados al salón de clases, incluyendo los transitorios durante el año escolar;

(d) Directores, bibliotecarios, orientadores y empleados de comedores adscritos al Departamento de Educación;

(e) maestros del Conservatorio de Música de Puerto Rico y de la Escuela de Artes Plásticas;

(f) profesionales de la salud (médicos, paramédicos, enfermeras, farmacéuticos y técnicos de laboratorio);

(g) trabajadores sociales;

(h) operadores del sistema de llamadas de emergencia 911;

(i) patólogos, personal pericial y técnicos del Instituto de Ciencias Forenses;

(j) empleados de la Comisión de Relaciones del Trabajo del Servicio Publico y la Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público;

(k) Personal de la Oficina de Servicios con Antelación al Juicio;

(l) Personal del Registro de la Propiedad;

(m) Personal de la Junta de Libertad Bajo Palabra; (Énfasis nuestro) y

(n) Consejeros en Rehabilitación Vocacional y personal de apoyo Técnico”

Los apelantes arguyen que el Legislador tuvo la intención “de excluir de las cesantías a la JLBP mediante la enmienda a la Ley 7”. (Escrito del apelante, pág. 16.) No podemos concurrir. En primer lugar, la Exposición de Motivos de la Ley 7, supra, explicó lo siguiente:
“[E]n la confección de este Plan, la Junta tomará en cuenta los objetivos de ahorro y la necesidad de mantener las operaciones de las agencias para proveer servicios a la ciudadanía. Con el fin de evitar un impacto negativo en los servicios gubernamentales, estarán excluidos del plan aquellos puestos que prestan servicios *1124 esenciales a la ciudadanía y que son esenciales para mantener la continuidad de servicios. ” Exposición de Motivos, Ley 7, supra, pág. 19. (Énfasis suplido.)
Como anteriormente explicamos, las diferentes secciones de un estatuto han de ser interpretadas en conjunto y de manera armoniosa, no aisladamente, para evitar resultados desatinados, confusos o absurdos. P.R.T.Co. v. J. Reg. Tel. de P.R.I., 151 DPR 269 (2000). La Exposición de Motivos de la Ley 7, supra, contempló como finalidad de las medidas de control y reducción de gastos excluir solamente los puestos que por su desempeño esencial dentro de una agencia, resultan estrictamente necesarios para mantener la continuidad de sus labores. Esta expresión en la parte expositiva de la ley encuentra también vinculación en la parte dispositiva de la misma, ya que de la oración introductoria del Art. 37 de la Ley 7, supra, surge que la Fase II establece “un plan de cesantías involuntarias para la eliminación de puestos el cual aplicará a todas las Agencias y a todo empleado que no esté excluido por el Art. 37.02 de este Capítulo III.” (Énfasis nuestro.)
En relación a la discusión sobre la exclusión del “Personal de la Junta de Libertad Bajo Palabra” del Art. 37.02, del Diario de Sesiones de la Cámara de Representantes de 19 de junio de 2009 se desprende lo siguiente:

“Y muchos se preguntarán, ¿porqué las exclusiones a estos empleados? Y me parece bien sencilla la contestación. Son agencias de seguridad pública que en estos momentos, donde la criminalidad ha aumentado dramáticamente, el Estado no puede dejar provisto ese servicio y necesita redoblar los esfuerzos en esas áreas, por lo que nosotros estamos dándoles, no solamente las herramientas en estas exclusiones para que esos empleados continúen haciendo el trabajo importante en el área de seguridad pública, sino también en la próxima asignación de presupuesto que estaremos haciendo el próximo lunes donde hemos identificado fondos adicionales para que estas agencias de gobierno puedan seguir defendiendo a Puerto Rico y no poniendo en precario la seguridad de todos los puertorriqueños.

Adicional a esto, excluimos de la Ley 7 a los miembros de la Junta de Libertad Bajo Palabra, a los Oficiales de Corrección, y bien importante, a los patólogos, personal pericial y técnico del Instituto de Ciencias Forenses, que son precisamente la gente que ayuda en el esclarecimiento de los casos. ” (Énfasis nuestro.) Diario de Sesiones de la Cámara, 19 de junio de 2009, pág. 7.
El argumento del apelante incide al tomar aisladamente un artículo de la ley haciendo caso omiso del resto y del propósito principal del estatuto. No puede válidamente sostenerse que el Art. 37.02 quiso eximir de las cesantías a todo el personal de la JLBP. Primeramente, la formulación discutida por la legislatura no define en forma detallada y específica cómo la JREF ha de establecer los puestos que sufrirán las cesantías. Más bien, lo que hacen los Representantes en la discusión en la Cámara es repetir literalmente parte de la lista del Art. 37.02, supra. De la información expuesta en la discusión del P. de la C 1640 de 12 de mayo de 2009, anteriormente citada, obtenemos que el lenguaje que establece el alcance a las exclusiones de cesantías hace referencia a “empleados” y “miembros de la Junta de Libertad Bajo Palabra”, no a todo el personal de esta agencia. La interpretación que hacemos del Art. 37.02, supra, es cónsona con la intención legislativa que debe atenderse.
Hacemos este análisis como un mero ejercicio para demostrar que el planteamiento de exclusión esgrimido por SPU como pasaporte para preterir el foro administrativo de la CRTSP y por vía injunction acudir directamente al foro judicial en primera instancia, no es válido. Conforme a lo que aquí resolvemos, corresponde a la CRTSP dirimir si la JLBP implementa correctamente las disposiciones de la Ley 7, supra, dentro de su ámbito de jurisdicción primaria exclusiva.
La preterición del foro administrativo, cuando allí propiamente debe dilucidarse el asunto en primera instancia ante la CRTSP, privaría a los comparecientes del tratamiento pericial que poseen las agencias de sus propias leyes y reglamentos ante un tema especializado como lo es el campo obrero-patronal.
*1125 Por otro lado, la impugnación constitucional de actuaciones administrativas no siempre está exenta del agotamiento de los remedios administrativos, máxime en este caso que fue allí iniciado ante la CRTSP.
A la luz de lo expuesto y de la casuística señalada, resulta correcta la decisión del TPI, aquí recurrida.
Dictamen
Conforme lo expuesto, confirmamos la Sentencia aquí apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIO 2010 DTA 56

. La JREF fue creada al amparo del Art. 37.04 (b)(5) de la Ley 7, supra, con el propósito de “hacer cumplir los objetivos del Capítulo 3 de esta Ley y a la que se le encomienda tomar todas las acciones necesarias para el cumplimiento de la misma.” Esta Junta está compuesta por la Directora Ejecutiva de la Oficina de Gerencia y Presupuesto, el Secretario de Hacienda, el Secretario del Trabajo, el Secretario de Desarrollo Económico y Comercio y el Presidente del Banco Gubernamental de Fomento para Puerto Rico.